### UNION TRUST CO. *v.* MABLEY & CO.

INSOLVENT CORPORATIONS—CLAIMS—PROMISE OF RECEIVER—CONSIDERATION.

An insolvent corporation executed a mortgage upon its goods and chattels in trust for certain creditors, and, upon application, a receiver was appointed. Other creditors attacked the transaction as fraudulent, among whom was a city, which threatened to take legal steps to secure a claim for taxes. The receiver thereupon assured the attorneys for the city that a prospective purchaser of the stock covered by the mortgage insisted, as one of the conditions of purchase, that the taxes be paid, and promised, if the city would forbear interfering with the sale by an attempt to enforce payment of the taxes, to reserve out of the proceeds the amount due. Upon the completion of the sale, the receiver, at the demand of the preferred creditors, denied liability upon the promise. *Held,* that the retention of the benefits of the sale, effectuated through the city's forbearance, rendered the agreement binding.

Appeal from Wayne; Donovan, J. Submitted June 10, 1897. Decided June 28, 1897.

Bill by the Union Trust Company against Mabley & Company to foreclose certain mortgages. The city of Detroit intervened, praying that certain taxes due to it be paid from the proceeds of the sale. From an order granting the prayer of the intervener, complainant appeals. Affirmed.

The following facts are agreed to:

"On November 23, 1896, Mabley & Co., a corporation doing business in the city of Detroit, executed and delivered to the Union Trust Company, as trustee, three mortgages covering the goods and chattels owned by it in the city of Detroit, in trust for the benefit of its creditors, who were named in the mortgages. The trustee accepted the trust. On November 23, 1896, a foreclosure bill in the usual form, praying for the appointment of a receiver and a sale of the property, was filed by the mortgagee. On the same day the answer of Mabley & Co. was filed, admitting the allegations of the bill. An application was on the same day made for the appointment of a receiver. The application was granted, and the Union Trust Company appointed receiver. The receiver at once, on November 23, 1896, took possession of the mortgaged property. On December 5, 1896, after presentation of testimony, the court made a decretal order that the property in the hands of the receiver be sold for $160,000, except the property claimed by Cane, McCaffrey & Co., and, as to that, to sell whatever interest Mabley & Co. had in that property. On December 7, 1896, the Union Trust Company reported to the court that the order above mentioned had been complied with, and a sale had been made to W. S. Peck & Co. for the sum of $160,000, and on the same day the court made an order confirming said sale. January 19, 1897, a final decree was entered, directing the distribution to the creditors of $157,000, as their interests appeared, leaving the $3,000 in controversy in this proceeding in the hands of the receiver."

Mabley & Co. was at the time indebted to the city of Detroit in the sum of $2,626.30 for taxes, which were due July 1, 1896. Upon the completion of the sale under the order of the court, the $3,000 was left in the hands of

the receiver, under the circumstances hereinafter detailed. The receiver, at the demand of the creditors, refused to pay the taxes, and the city filed its petition, asking the court to direct it to pay them.

The facts are to be found in the affidavits of Arthur Webster, and Charles D. Joslyn, counsel for the city, attached to the petition, and of Mr. Hance, attached to the answer of the receiver. Mr. Webster states that he went, a few days after the trust company had taken charge of the business, to its office, and was referred to its secretary, Mr. Hance; that he informed Mr. Hance of the amount of the taxes, and that, "while the city did not wish to cause Mabley & Co. any more trouble, still it would be necessary, in order to protect the city's interests, to levy upon the stock of Mabley & Co., and to take such steps in court as might be necessary to insure the payment of said taxes. Deponent was informed by said Hance that a settlement of the affairs of Mabley & Co. was even then pending, and that arrangements were being consummated to sell the stock of goods to W. S. Peck & Co.; that if the city levied upon the stock of Mabley & Co., or took any other steps to enforce the payment of these taxes, this would spoil the proposed sale, and he requested deponent not to take such steps. Said Hance assured deponent that the sum of $3,000 had been or would be laid aside with which to pay said taxes, interest, and charges in full." Deponent informed Mr. Joslyn of this interview, and they both then went to see Mr. Hance, who then assured them "that all the creditors, except those represented by Sloman, were coöperating to bring about the sale to W. S. Peck & Co., and knew that said amount had been reserved for the city; that no one would object, except possibly those represented by Sloman & Groesbeck, and they could not make any trouble, as the goods which they had sold Mabley & Co. were set apart, so that, if they were successful in their litigation, the goods could be returned to them; that said Hance then agreed that, if no steps were taken by the city of

Detroit to enforce payment of said taxes, the said amount of $3,000 would be reserved to pay the said taxes, interest, and charges due the city from Mabley & Co. as soon as the sale to W. S. Peck & Co. was closed, to which said Joslyn and this deponent agreed."

Mr. Joslyn's affidavit is to the same effect, and says: "Said Hance assured deponent that the purchaser insisted, as one of the conditions, that the taxes be paid," and that he had several interviews afterwards with Mr. Hance in which he promised to pay.

Mr. Hance, in his affidavit, says that the statements made by Webster and Joslyn "are substantially correct, with the exception that this deponent did not give either of said parties to understand that said taxes would be paid by him as receiver, unless, as receiver, he had the legal right to do so; that deponent gave them to understand, and supposed that said Joslyn and Webster did understand, that the city would lose none of its rights by refraining from levying upon the stock of goods. Deponent did not intend to be understood as promising to pay the tax if the city had no right to levy upon the goods or to collect the tax by legal proceedings at that time. Deponent further says that he was well aware at the time that his powers as receiver were not broad enough to permit him to make a payment to the city of Detroit of moneys in his hands, unless the claim upon which the money was to be paid constituted a lien upon the property in his hands as receiver superior to that of the mortgages upon the same; and if said Webster and said Joslyn understood deponent to make any promises to pay said taxes in case they were not liens and could not have been collected at the time a levy was threatened, they entirely misunderstood deponent. Deponent further says that he did induce the representatives of the city of Detroit to refrain from making a levy upon the property of Mabley & Co. upon the 24th day of November, 1896, and that the rights of the city of Detroit should be determined as though a levy

had been made upon that day, and that the city ought to lose no rights whatever by reason of its action in refraining from making a levy at the time above mentioned."

The contention on behalf of the creditors is thus stated:

"1. That any lien which the city could have acquired by a levy, after the receiver was in possession, would have been subordinate to the lien of the mortgage; and that, since the fund was held until the rights of the city could be determined, it suffered no harm by complying with Hance's request that it should not attempt to interfere with the goods.

"2. That the record shows no promise by the receiver to waive the paramount right of the beneficiaries under the trust mortgage to the goods and the fund arising from their sale.

"3. That, if Mr. Hance did promise to waive that right, he exceeded his authority, and the beneficiaries are not bound thereby."

*Russel & Campbell*, for complainant.

*Moore & Moore, Wells, Angell, Boynton & McMillan*, and *Elliott G. Stevenson*, for creditors, and of counsel for complainant.

*C. D. Joslyn*, for intervening petitioner.

GRANT, J. (*after stating the facts*). The city had no lien upon the goods, because no levy had been made, and, if the collector had threatened to levy, the receiver could have paid under protest, and maintained a suit to recover the money paid. *Lyon* v. *Receiver of Taxes*, 52 Mich. 276. It must follow that the receiver could not, of his own motion and without consideration, agree to the existence of a lien, and give it preference over the secured creditors. The difficulty is one not of law, but of fact. The situation was this: Mabley & Co. had failed. They had favored some creditors by mortgage. Other creditors attacked the transaction as fraudulent. Among them was the city, which threatened to take legal steps to secure its claim. The receiver was trying to make a sale. The secured creditors were anxious that the sale should

'be made.   If the city took the action it proposed to, the sale could not be accomplished.   The city would forbear action only upon the condition that the receiver would retain from the amount of the sale sufficient to pay these taxes.   The purchaser would buy upon this condition only.   The receiver agreed to it.   Action by the city was forborne.   The sale was accomplished and the money retained.   The creditors cannot retain the benefit of the sale, and repudiate the terms upon which it was made, even if the receiver, acting for them, exceeded his authority.   Mr. Hance does not deny the positive statements made by Webster and Joslyn.   He only seeks to avoid their effect by giving his interpretation of them.   This he cannot do.   If we give the conceded statements their natural interpretation, we cannot escape the conclusion that the agreement to withhold this money for the payment of the taxes was made, and that without it the sale would not have been consummated.   The arrangement was favorable to all parties interested, and must be sustained.

Order affirmed, and the receiver directed to pay the taxes out of the amount in its hands.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred. HOOKER, J., did not sit.